DREW, E. HARRIS, Associate Judge.
. Candido Vega, hereafter called the husband, filed his sworn complaint for divorce against Luciana Vega, hereafter called the wife, on August 30, 1957, in which he alleged that his wife had been guilty of willful, obstinate and continuous desertion for more than one year last past, to-wit: from the 10th day of August, 1956; the husband further alleged that he “does not know her [the wife’s] address or whereabouts or where she went to * * * and has not lived nor seen the defendant from afore-mention (sic) day the 10th of August, 1956 to this date of the filing of this his bill of complaint.” In the affidavit attached to the complaint the husband alleged that the residence of the wife was unknown; that several times prior to the date of the filing of the affidavit he had made diligent search *30 and inquiry to ascertain her residence or whereabouts but had failed to ascertain the same. On the basis of the sworn bill and the affidavit, constructive service was had upon the wife and in due course an order was entered by the trial judge that the bill be taken as confessed.
A hearing was conducted before the trial judge, after entry of decree pro confesso, on December 11, 19S7. At this hearing the husband, under oath, testified that the wife left him August 10, 1956, five days after their marriage without any explanation but that he understood that she had married him solely to become an American citizen because she came from Spain. He testified he did not know where she went after she left him and, under oath, he stated that when he filed his action for divorce he did not know her address and that he had not heard from her nor had he seen her since August 10, 1956. He testified that there were no children born of the marriage and that at the time he filed the suit for divorce he lived at 67 N.W. 24th Street, Miami, in a home where he moved when he came to Miami the first week in April of 1957. Two witnesses testified corroborating his residence and that he, the husband, lived alone. At the conclusion of the hearing the court interrogated the husband and asked him the direct question “Mr. Vega, where is your wife?” The husband’s reply was “I believe she went back to Spain with her people that she worked for.” The court further inquired “ * * * have you heard from her at all?” to which the husband replied, “No I haven’t heard at all.” The hearing was thereupon concluded and, on the same date, to-wit: December 11, 1957, the chancellor entered a final decree of divorce and the same was recorded on that date in the public records of Dade County.
The next episode in this bizarre case occurred on the 5th of June following when the wife filed a sworn motion to set aside the final decree of divorce before the same chancellor who heard the case originally.[1] This motion alleged, under oath, that at the time the husband instituted the suit against the wife he, the husband, knew that the wife was employed at the home of a certain diplomat in Washington, D. C., as a domestic and that the allegations of the complaint and the affidavit attached that he did not know of the plaintiff’s residence or whereabouts was untrue and constituted a fraud on the court. Moreover, it was alleged in the sworn motion that contrary to the testimony given at the final hearing for divorce by the husband, under oath, that no children were born as a result of said marriage, that the parties were the parents of a small child; that about two months before the rendition of the final decree of divorce and prior to the date of the sworn testimony given before the chancellor on which said divorce was rendered, the husband had sent for the wife and child and that they had joined him in the City of Miami; that they were living together as husband and wife in Miami, Florida, during the time between the latter part of October, 1957 and April 15, 1958, when the husband told the wife he would not further provide for her; that shortly thereafter the wife learned that a decree of divorce had been entered on the 11th day of December preceding. On the filing of the motion a writ of ne exeat was issued and served upon the husband and he was directed by a court order to show cause why the final decree of divorce should not be set aside. The husband made no response to the motion and the matter came on for hearing before the chancellor.
At this hearing before the chancellor the wife testified, under oath, in support of the allegations of her motion. The testimony of the wife taken before the chancellor shows that two days before the husband filed the complaint in said cause he had written her a letter which she had received in Washington. There can be no doubt *31 from the testimony presented to the chancellor at this hearing that the husband was able to communicate with his wife at the time he filed his complaint; moreover it is clear that the husband told less than the whole truth at the hearing before the chancellor on which the decree of divorce was rendered when he said that no child was born “of the marriage.” It affirmatively appears from the testimony of the wife at this hearing that, in the latter part of October, 19S7, less than two months after the complaint was filed, the wife'came to Miami and from that date until April, 1958 they (husband and wife) resided together in the City of Miami. The record does not show whether the husband was present at the hearing or whether there were other witnesses. The hearing was terminated by the chancellor after he had examined the wife concerning the contents of a letter he, the chancellor, had received through the mail from a person who represented that she was a former employer of the wife. This letter was apparently written to the chancellor at the request of the husband. What relevancy this letter had to the subject of the inquiry does not appear nor does this record show any foundation for the chancellor placing said letter in evidence or examining the wife concerning it. There is no proof of the authenticity of the letter or the genuineness of it. Elemental principles would have precluded its use as evidence.
Toward the end of the testimony it was brought out that the wife had received a letter from the United States Department of Justice advising her an investigation by them revealed her status was in violation of the immigration rules and that they had decided to grant her, the wife, the privilege of voluntary departure provided she left the country not later than July 4, 1958. The letter concluded with the admonition that failure to take advantage of the privilege would result in deportation proceedings against her. There is an inference — growing out of the tenor of the examination of the wife both by the attorney representing the husband and the court — that her object in attempting to set aside the decree of divorce was to re-establish the marital relation and thus prevent her deportation from the United States.[2]- -For instance, a question propounded to the wife was as follows: “Mrs. Vega, you brought up these charges in the divorce with the belief that then you will remain the wife of an American citizen and that is the purpose of these proceedings, isn’t that true?” To which the wife replied, “No.” She was then interrogated as to her reason for filing the petition to set aside the divorce decree. Whereupon the court took up the examination with the inquiry “Do you want to remain married to this man”, to which the witness replied, “I don’t want to live with him any more because he has given me a very bad life.” Whereupon the hearing concluded as follows:
“Examination by the Court
“Q. You want this divorce -decree set aside so you can be his wife? A. Yes; but I don’t want to live with him.
“Q. In other words, all you want is the official relationship between you and your husband so you can remain in this country? A. Yes; that is it, but not with him.
“The Court: The petition is dismissed with prejudice, and I will take under advisement whether I will hold the petitioner in contempt of court or not, and her lawyer. Let me ask her something.
“Q. You know Alda L. Sanza, in Washington, D. C.[3] A. Yes.
“Q. Her husband is the Economic and Social Delegate of Brazil — did you work for them? A. Yes; he is the delegate from Brazil.
*32 “Q. They are the godparents of your child? A. Yes.
“Q. I understand you had three abortions? A. No. I only lost one baby.
“Q. You did not have three abortions? A. No; just the one that I lost.
“Q. Did you take psychiatric care? A. I don’t understand.
“Q. Did you ever live in Baltimore? A. Yes.
“Q. With your husband? A. Yes.
“Q. Did you ever work for a retired American Admiral in Newport? A. Yes; two months.
“Q. Is that where you had your second abortion? A. No; that was the first baby I lost, and it was caused because he beat me. He would hit me around the kidneys when I was bending over washing clothes.
“Q. Was your husband with you in Newport, Rhode Island? A. No; I don’t know where he was at that time. He would call me at Newport on the telephone to come here.
“The Court: I want this letter to be part of this file. The petition is dismissed with prejudice.
“Mr. Morales: Do you want me to prepare the decree or do you want to prepare it?
“The Court: You prepare it. I want to give you a copy of this letter. It will be well for you to read the letter from her former employer.
“Mr. Rosillo: You have not ruled as to the custody of the child.
“The Court: I am going to grant that to the father. She is entitled to see the baby at any time.”[4]
At the conclusion of the hearing the court entered the decree which is the subject of this appeal. He denied the motion to set aside the final decree and dismissed the petitions for writ of ne exeat and the rule to show cause with prejudice. Paragraph 2 and 3 of the decree read as follows :
“2. That from the sworn testimony of the Defendant, Luciana Vega, and from tire statement in court of her attorney Albert Rosillo, and the records in this cause, it is the opinion of this court, that said Defendant Luciana Vega, and her attorney both perpetrated a fraud on this court, in filing and presenting said Motion and Petitions, and therefore it is hereby ordered and decreed, that Luciana Vega, the Defendant, and Albert Rosillo, her attorney in this cause, are both hereby held in contempt of this Court, and that they each are to be dealt with for said offense, upon a further order of this Court, to be issued for this purpose.
“3. It is further ordered and decreed, that the caré and custody and absolute control of Lucy Lee Vega, daughter of said parties to this cause, is hereby awarded to Candido Vega, the Plaintiff, until the further order of this Court.”
The simple way to dispose of this case would be merely to vacate the decree of the chancellor and direct further proceedings in this cause, but our duty in the face of a record showing such an abuse of judicial power far transcends such perfunctory action on our part. When the chancellor concluded the hearing, the evidence before him clearly indicated that a gross and flagrant fraud had been committed upon the court by the husband on the basis of which he had procured a decree of divorce. The unchallenged testimony *33 before the chancellor was to the effect that the defendant had misled the court in at least three major respects, first in swearing that he did not know where his wife was at the time he filed the suit, second, in testifying under oath that no children were born to the parties and, third, in testifying under oath that he did not know where his wife was at the time he was testifying when, according to substantial evidence in the record, they were then living together as husband and wife in Miami.
There is no basis in this record to support the conclusion of the chancellor that the wife and her attorney had perpetrated any fraud on the court. Moreover, we find no basis or any conceivable theory upon which the chancellor could have held the wife and her attorney in contempt of court for bringing to the attention of the court the fact that a gross and wanton fraud had been perpetrated upon it in the procurement of the divorce.
The inquiry of the court should have been directed to the question of whether the processes of the law had been fraudulently invoked. Whether the wife was an alien subject to deportation or a woman of bad character, or whatever her motives may have been in bringing the facts to the court’s attention in a proper manner, was of no importance. The action of the court in ignoring the fraud which appeared to have been practiced upon it, and rewarding the perpetrator thereof, cannot be condoned.
The decree appealed from is hereby vacated, set aside and held for naught. The wife and the attorney in this cause are hereby discharged from the adjudication of contempt and this cause is hereby remanded for the purpose of conducting a proper and orderly[5] hearing on the motion to vacate the final decree of divorce and such further proceedings in the premises as shall be necessary to determine the issues presented.[6]
It is further directed that the state’s attorney for the eleventh judicial circuit be furnished a copy of this opinion by the Clerk of this Court.
_ Reversed and remanded for further proceedings.
CARROLL, CHAS., C. J., and PEARSON, J., concur.

. This is the correct procedure to be followed in such cases. See Sawyer v. Gustason, 1928, 96 Fla. 6, 118 So. 57; Daytona Enterprises, Inc. v. C. J. Wagner, Fla.1956, 91 So.2d 171.

. The correctness of tliis conclusion is not an issue.

. This is the alleged author of the letter referred to heretofore.

. The pleadings created no issue as to the custody of the child. The husband had filed no pleading and the whereabouts of the child or who had custody of it at the time do not appear in the record.

. Cf. Hoffman v. Hoffman, Fla.1957, 92 So.2d 524. Kurtz v. Kurtz, 112 Fla. 619, 150 So. 785.

. State ex rel. Lorenz v. Lorenz, 149 Fla. 625, 6 So.2d 620. Also see footnote 5, supra.